LEAGUE OF WOMEN VOTERS OF
CALIFORNIA et al., Plaintiffs,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Defendant.

No. CV–79–1562–MML.

United States District Court,
C. D. California.

March 10, 1980.

Alletta d'A. Belin, John R. Phillips, Walter Cochran Bond, Timothy B. Flynn, Car-

lyle W. Hall, Jr., A. Thomas Hunt, Jan G. Levine, of Center for Law in the Public Interest, Los Angeles, Cal., for plaintiffs.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Andrea Sheridan Ordin, U. S. Atty., Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., Barbara B. O'Malley, Lewis K. Wise, Attys., Dept. of Justice, Washington, D. C., for defendant.

Michael Davidson, Senate Legal Counsel, Charles Tiefer, Asst. Senate Legal Counsel, Washington, D. C., for amicus curiae United States Senate.

## ORDER GRANTING UNITED STATES SENATE'S MOTION TO APPEAR AMICUS CURIAE, DENYING PLAINTIFFS' MOTION TO DISALLOW FILING OF SENATE'S MOTION TO DISMISS, AND GRANTING SENATE'S MOTION TO DISMISS

LUCAS, District Judge.

This action was originally commenced on April 30, 1979 by the League of Women Voters of California, Congressman Henry Waxman, and Pacifica Foundation against the Federal Communications Commission seeking declaratory and injunctive relief against the enforcement of 47 U.S.C. § 399(a). That section forbids noncommercial broadcast licensees to editorialize or to endorse or oppose candidates for public office. Subsequently, a first amended complaint was filed on August 28, 1979. The gravamen of the complaint is that 47 U.S.C. § 399(a) is unconstitutional on its face in that it violates the First Amendment rights to freedom of speech and of the press and, as to plaintiff Pacifica, that it violates the equal protection of the laws under the due process clause of the Fifth Amendment. Plaintiffs noticed a motion for summary judgment on September 24, 1979. In the Stipulation re: Time for Filing Defendant's Response to Plaintiff's Motion for Summary Judgment and Hearing Thereon, filed on October 23, 1979, the FCC stated that it had "determined to discontinue its defense of the constitutionality of Section 399(a). . . ." and that it had so advised the Congress. On January 18, 1980 defendant again stated that it would not defend this action.

On January 17, 1980 the United States Senate filed a motion to appear as amicus curiae and subsequently filed the instant motion to dismiss. In response, plaintiffs filed their motion to disallow the filing of the motion to dismiss. By stipulation of the parties, the hearing on plaintiffs' motion for summary judgment was continued until after the decision by the Court on the motions to appear as amicus curiae, to disallow the filing of the motion to dismiss and, contingently, the motion to dismiss.

The Senate's motion to appear as amicus curiae and motion to dismiss and plaintiffs' motion to disallow the filing of the Senate's motion to dismiss came on for hearing before the Honorable Malcolm M. Lucas, United States District Judge on March 3, 1980. After thoroughly considering the papers filed in this action and the arguments advanced at the hearing, the Court makes the following findings:

*MOTION TO APPEAR AS AMICUS CURIAE*

■ The United States Senate has a right to appear as an amicus in this action under the provisions of 2 U.S.C. §§ 288e(a) and 288*l*(a). Those statutes allow the Senate to appear unless the Court finds that the appearance is untimely and that it would significantly delay the pending action. The Court does not so find and, without objection from the parties, hereby grants the motion.

*MOTION TO DISALLOW THE FILING OF SENATE'S MOTION TO DISMISS*

■ The Court finds that the role of an amicus is flexible and can be moulded by the Court to best serve the exigencies of the particular action. In this instance, the present motion by the Senate would in no manner interfere with the conduct of the case by the defendant. As an alternative, the Court is free to treat the motion to dismiss as a suggestion that the Court lacks subject matter jurisdiction. Such a suggestion is appropriate at any point and may be

made *sua sponte* by the Court. In any event, the Court finds that the consideration of the motion to dismiss would substantially advance the litigation and hereby allows it to be filed. Therefore, the Court hereby denies plaintiffs' motion.

### MOTION TO DISMISS

As the federal courts are courts of limited jurisdiction it is necessary in the first instance for the Court to satisfy itself that this action is one over which jurisdiction under the Constitution exists and as to which competency has been granted to this Court by Congress. These constitutional considerations are often grouped under the rubric justiciability which itself comprises ripeness, adversariness, standing, and so on. The language of Article III of the Constitution speaks of jurisdiction over "cases" and over "controversies". Therefore, the Court must ultimately find that a case or controversy exists. Notions of justiciability are simply means toward that end.

The difficulty in resolving these questions stems in large measure from the difficulty in framing standards and requirements that are susceptible to ready and widespread application. In most instances, the questions are of degree and the result turns upon an assessment of the particular action's place on a continuum from clearly nonjusticiable to clearly justiciable. The only real guidance, apart from attempts in the case law to articulate descriptive standards, comes from comparison with the facts and results of case after case after case. Similar complications arise from the fact that in many cases the Court must be aware that a properly justiciable action is almost certain to arise with a seemingly ineluctable or inconsequential change in the facts. In such instances the temptations are great to move forward to the merits and the considerations of case or controversy are further compounded.

Nevertheless, despite the difficulties of framing and resolving the issues, the necessity of evaluating and placing an action on a seeming "slippery slope", and the frustrations attendant in determining whether a salient issue is proper for present adjudication, the Court must patiently determine that every action brought before it meets the constitutional requirements for adjudication. Failure so to determine jeopardizes the delicate array of powers established by the Constitution and vitiates the assurance, which such a determination brings, that the Court is acting in that characteristic but undefinable "judicial" mode. While these considerations inhere in every action in the federal courts, they become literally vital when, as here, the Court is asked to exercise its most potent and grave power: declaring an Act of Congress invalid as contrary to the Constitution. The necessity of grappling with these considerations has often and eloquently been developed but no where is it more pungently formulated than in Mr. Justice Brandeis's frequent remark that "the most important thing we do is not doing". With these considerations in mind, the Court proceeds to examine the present action.

Questions of ripeness are often turned around and presented as questions of standing. Whether the Court deals with one measure or the other turns upon the posture of the particular facts. In this instance it is more useful to consider the question as one of ripeness. In other words, is this action as presented by these parties proper for judicial resolution now. At bottom, the Court must balance and trade off the value in deciding the question now against the harm to the parties in postponing a decision. This mode of inquiry suggests that there are contingent events that would make the action more concrete should they occur. In this case there is no suggestion that any plaintiff, particularly Pacifica, has violated § 399(a). Nor is there a suggestion, in fact the opposite is suggested, that defendant intends to enforce that section. The defendant has taken the position that § 399(a) is, indeed, unconstitutional and on that basis it is reasonable to conclude that a violation of the statute by Pacifica or any other broadcaster would not be punished. The FCC has also represented that it would seek to impose only the most minimal sanctions on Pacifi-

ca. That willingness to enforce the statute solely for the purposes of test litigation indicates that otherwise the FCC will not enforce the statute. It is, to the Commission, a nullity. . . .

The plaintiffs challenge § 399(a) on its face. Therefore, they argue, there is no need to violate the statute to test its constitutionality and thus the present factual posture of this case suffices to create the proper ripeness. The mere presence of the statute is alleged to chill Pacifica's First Amendment rights. Waxman and the League are even more removed from the effect of § 399(a). As neither of them is a broadcaster, they challenge the statute as interfering with their right to receive the free speech of broadcasters such as Pacifica.

Although the Supreme Court has, in recent years, relaxed the standing/ripeness requirements for suits brought to enforce constitutional (especially First Amendment) rights, there remain limits beyond which the Supreme Court cannot go. Speaking recently in a case also involving a First Amendment challenge to a statute on its face, the Court reiterated its holdings that many postures exist in which the parties may assert First Amendment rights even when those parties have a tenuous connection with the dispute. Nonetheless, the Supreme Court also recognized that these cases still must meet the Article III requirements that are embodied in the principal of ripeness. *"Given a case or controversy, a litigant whose own activities are unprotected, may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." Village of Schaumburg v. Citizens for a Better Environment,* —— U.S. ——, ——, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980) (emphasis added).

 Because in this instance there is the distinct likelihood that the FCC will not seek to penalize a broadcaster that violates § 399(a) and because the hardship to be imposed upon the parties should the Court not now decide the constitutionality of § 399(a) is minimal, the Court finds that this case is not ripe for decision at this time.

Although the statute is challenged on its face, the Court cannot say that the particular facts of any given violation and prosecution under the statute would not color the outcome of this case. The Court finds that it would be improper to attempt to make a constitutional decision without having a concrete factual basis with which to work. That basis does not exist in this case and the Court declines to resolve the constitutional question in the abstract.

 A second aspect of justiciability that is germane here is the issue of the adversariness of the parties. Our court system is designed to resolve concrete disputes between at least two parties possessing adversary interests. Where it is clear that both sides desire the same result, the requisite adversariness is lacking and the action is not a case of controversy. In this case, the actions of the defendant indicate that there is no genuine adversariness of interests. As noted before, the FCC has not undertaken a prosecution of plaintiff Pacifica Foundation. Although the FCC states that it might prosecute Pacifica should Pacifica violate § 399(a) at some future date, it is plain that at this time there are no adverse parties to this action. The role of the FCC in this action has been to file a statement of no opposition to plaintiffs' motion for summary judgment because defendant agrees that the statute is unconstitutional. No attempt is made by the FCC to posit any arguments in support of the statute nor is it suggested that any such arguments would be forthcoming from the FCC if Pacifica violated and the Commission prosecuted under the statute. In sum, the Court finds that abundant evidence indicates that all parties seek this Court to declare § 399(a) unconstitutional. Therefore, there is no case or controversy under Article III. *See, Moore v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971) and *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

It is not without consequence that the decision not to argue in favor of the statute is being made by the Executive Branch.

That fact colors this litigation in that a conflict between the Legislative and Executive branches is presented by the passage of the statute by the one and the decision by the other to acquiesce in a declaration that the statute is unconstitutional. Hence this suit is flavored by a *sub silentio* prayer by the Executive branch for action by the Judicial branch that it cannot take itself. For that reason, it is even more important that the Court be presented with concrete facts, adversary parties, and every requisite of jurisdiction and competence to insure that such clashes between the two other branches are resolved as the Constitution envisions.

Because the Court finds that this case is not ripe for adjudication and that no adverse parties exist, the case is not justiciable. That is, the Court finds that no case or controversy exists as required under Article III of the Constitution. Therefore this Court is without power to decide this suit on the merits or, indeed, to take any further action at all.

Accordingly, it is hereby ordered that this action be dismissed.

IT IS SO ORDERED.