**MOBIL OIL CORPORATION, Plaintiff,**

v.

**ATTORNEY GENERAL OF the COMMONWEALTH OF VIRGINIA**

**and**

**Commissioner of Agriculture and Consumer Services of the Commonwealth of Virginia, Defendants.**

**Civ. A. No. 3:90CV00381.**

United States District Court, E.D. Virginia, Richmond Division.

Oct. 4, 1990.

Thomas Glascock Slater Jr., Michael J. Lockerby, Hunton & Williams, Richmond, Va., for plaintiff.

Eric Karl Gould Fiske, Jeffrey A. Spencer, Gregory E. Lucyk, Patrick Ross Bynum Jr., Kermit Marshall Cook, Office of the Atty. Gen. of Va., Mary Sue Terry, Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

SPENCER, District Judge.

This matter is before the court on the defendants' motion to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons stated in this memorandum, the motion will be granted as to both defendants.

### I

Mobil Oil Corporation ("Mobil") seeks declaratory and injunctive relief against the Attorney General and the Commissioner of Agriculture and Consumer Services ("Commissioner"—collectively, "the Commonwealth") of Virginia. It contends that recent amendments to the Virginia Petroleum Products Franchise Act ("the Act," or "VPPFA"), Va.Code Ann. §§ 59.1–21.8 to

–21.18:1 (1987 & Cum.Supp.1990) are unlawful because they:

1.) conflict with and are preempted by part of two federal acts regulating the same activities, the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806, and the Lanham Act, 15 U.S.C. §§ 1111–1127;

2.) deprive Mobil of its property, specifically its investment in Mobil brand service stations in Virginia and its federally registered trademarks, without just compensation, in violation of the takings clause of the fifth amendment to the United States Constitution;

3.) violate the special laws prohibition of the Virginia Constitution, article IV, sections 14–15, because they create arbitrary distinctions between types of service stations, with no reasonable relationship to the Act's purposes; and

4.) violate the contract clause, article I, section 10 of the United States Constitution (and comparable Virginia Constitution article I, section 11), because they will substantially impair Mobil's contracts with dealers and potential lessors of service station properties in Virginia.

The Commonwealth has moved to dismiss the complaint, on grounds that it is barred as to the Commissioner by the eleventh amendment to the United States Constitution, and that it fails to raise a "case or controversy" with respect to the Attorney General, as required by article III to the Constitution. The parties offered extensive briefs and oral argument on the issues presented, and the motion is ripe for decision.

## II

Mobil's 37–page complaint may be summarized as follows.

Mobil's franchise agreements with service station operators all include certain uniform or minimum requirements, related to hours of operation, physical layout, appearance, quantity of Mobil products purchased, advertising and trademark use, participation in the Mobil credit card program, etc.[1] *See* Complaint at paras. 19–23. Mobil views these standards as crucial to building brand loyalty in Virginia, where Mobil has invested over $27.9 million for a piece of the competitive retail motor fuels market. *Id.* at paras. 8, 23–24. Mobil especially emphasizes the importance of requirements regarding minimum Mobil product volume, and hours of operation, and declares that it would be "unable to recover its substantial investment and ensure the uniformity of its franchise system" without them. *Id.* at para. 34.

Congress since 1978 has extensively regulated most of Mobil's franchise relationships, via the PMPA, 15 U.S.C. §§ 2801–2806. The PMPA regulates the creation, enforcement, and termination of petroleum products franchise agreements, and expressly preempts conflicting state and local laws relating to termination or nonrenewal of franchise relationships. 15 U.S.C. § 2806(a).

Mobil alleges its franchise agreements and franchise renewal plans are valid under the PMPA, but violate or would violate at least the following provisions of Virginia law:

1.) § 59.1–21.16:2(C), precluding imposition of "purchase or sales quotas," in new or renewed leases and supply contracts;

2.) § 59.1–21.11(1), providing that dealers "shall not be required" to keep retail outlets open for more than 16 hours a day, or six days per week;

3.) § 59.1–21.11(6), requiring service station rental agreements to reflect "commercially fair and reasonable standards, uniformly applied to all similarly situated dealers of the same refiner in the same geographic area;"

4.) § 59.1–21.11(4), which bars petroleum refiners from limiting the number of stations operated by a franchisee-dealer;

1. Mobil refers to its uniform quality, appearance and operation standards as "Mobil's Trademark Image." Complaint at para. 13.

5.) § 59.1–21.11(6), which requires renewals of franchise agreements to be for a period of at least three years;

6.) § 59.1–21.11(7), which forbids credit card service fees to dealers "in excess of the customary fee charged by credit card services to retailers who authorize use of credit card purchases;"

7.) § 59.1–21.16:2(A), banning refiners from constructing or operating with company personnel any new retail outlets in the Commonwealth, from July 1, 1990 through June 30, 1991, except on certain property purchased or under option to purchase by March 1, 1990.

Mobil claims these "offending provisions" collectively infringe on its contract rights, supervisory authority, and federally protected trademark,[2] and constitute unconstitutional or otherwise unlawful enactments, as briefly described above, *supra* pages 1–2. It prays that this Court declare the offending provisions unlawful, and enjoin "enforcement by the Commonwealth" of any of the provisions so declared.

### III

The grounds for dismissing each defendant are discussed separately below.

*The Eleventh Amendment Argument*

The Eleventh Amendment to the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It is settled law that the same jurisdictional bar applies, in suits against a state by the state's own citizens. *E.g., Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Federal courts nonetheless have the authority to grant equitable relief against state officials charged with enforcing un-constitutional statutes, under the doctrine established in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Mobil and the Commonwealth robustly dispute the applicability of that doctrine in this case, however. Resolution of this dispute requires detailed examination of certain provisions of the VPPFA.

The VPPFA defines the relationships of parties to certain petroleum products franchise agreements, for the "preservation of the rights, responsibilities and independence of small businesses in the Commonwealth." Va.Code. Ann. § 59.1–21.9 (Cum.Supp.1990). It contains three clauses addressing enforcement:

*Civil action for violation:* $2,500 in liquidated damages (up from $500 in the former version), plus reasonable attorney's fees, provable damages, and "such other remedies, legal or equitable, including injunctive relief, as may be available to the party damaged;" a 2–year statute of limitations applies. *Id.* § 59.1–21.12.

*Regulatory powers:* the Commissioner is directed to adopt regulations:

(i) defining the circumstances under which a refiner may temporarily operate a previously dealer-operated retail outlet; (ii) providing for the rebuilding or relocation of retail outlets which were producer or refiner operated on July 1, 1979; (iii) requiring each refiner to file a list of retail outlets operated by such refiner and to keep such listing current; (iv) requiring each franchise dealer to file a listing of any retail outlets operated by such franchise dealer, and to keep such list current.

*Id.* § 59.1–21.16:2.

*Attorney General's authority:* "Nothing in this chapter shall be construed as limiting the authority of the Attorney General under the provisions of § 59.1–68.2." *Id.* § 59.1–21.16 (1987). The provision alluded to reads:

---

**2.** Mobil specifically alleges that the Virginia law's bar on minimum product quotas will permit Mobil franchisees to also sell competing brands, effectively permitting an association of different trademarks and trade names, in violation of the Lanham Act, 15 U.S.C. § 1121(a). Complaint at para. 72.

Notwithstanding any other provisions of the law to the contrary, the Attorney General may investigate and bring an action in the name of the Commonwealth to enjoin any violation of Chapters 2.1 (§ 59.1–21.1 et seq.) through 3.1 (§ 59.1–41.1 et seq.) [regarding home sales, the VPPFA, the Emergency Petroleum Products Supply Act, Equal Credit Opportunity Act, and commercial audio recording laws] and of Article 8 (§ 18.2–214 et seq.), Chapter 6 of Title 18.2 [regarding misrepresentation and other commercial fraud] of this Code.

The Commissioner's department issued "Rules and Regulations for Enforcement of the VPPFA" ("Regs.") in 1986. Plaintiff's Mem. in Opposition to Motion to Dismiss, at Exh. A. The regulations require certain information filings with the Department of Agriculture & Consumer Services. *See* Regs. §§ 3A, 3B. They also permit the temporary operation by producer/refiners of franchised outlets where the franchisee is ill or injured, but "subject to certification upon the request of the commissioner." Regs. § 1A. Another provision reads:

> Failure to register as required may mean loss of protection provided by the VPPFA, § 59.1–21.16:2 … or the rules and regulations for the enforcement of that act.

Regs. § 3C.

The Commissioner must generally "see to the proper execution of the laws relating to the subject of his Department, and he shall investigate and promote such subjects relating to the improvement of agriculture, … and for the inducement of immigration and capital." Va.Code Ann. § 3.1–14(A) (1983). He must also hold confidential all records regarding regulatory inspection schedules, commercial/financial information supplied by businesses, reports of criminal violations by persons outside the department, and records of active investigations. *Id.* § 3.1–14(B).

Mobil insists this demonstrates that the Commissioner has a sufficient role in enforcing the VPPFA, to bring him within the eleventh amendment exception defined by *Ex parte Young*. The Commonwealth disagrees, and notes that the VPPFA has previously been enforced and construed only in private litigation, not prosecution by the Commonwealth. The weight of authority favors the Commonwealth's position.

In *Ex parte Young*, a Minnesota law essentially reduced railroad rate ceilings and provided severe criminal penalties (a $5,000 fine and/or five years in prison) for railroads and their agents who failed to comply. The day before the law took effect, stockholders of nine railroads brought suit in federal court to enjoin their companies from complying. They claimed the rates were confiscatory and unconstitutional, and joined the Minnesota attorney general as a defendant, seeking to restrain him from enforcing the law. The trial court issued a preliminary injunction. The attorney general promptly violated this, by seeking a state court mandamus to force the railroads to comply with the law. He was fined and jailed for contempt, and applied to the Supreme Court for a writ of habeas corpus.

The Court dismissed the petition, and declared that injunctive relief did not violate the eleventh amendment, because

> [I]ndividuals who, as officers of the state, are clothed with *some duty in regard to the enforcement of the laws* of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908) (emphasis added).

Mobil reads the case to permit injunctions against officials with only nominal enforcement authority, and relies on the emphasized language above. *See also id.* at 157, 28 S.Ct. at 453 ("[I]t is plain that such officer must have *some connection* with the enforcement of the act …. [but it is not] necessary that such duty should be declared in the same act which is to be

enforced. .... *[S]ome connection with the enforcement* of the act, is the important and material fact....") (emphasis added); *id.* at 160, 28 S.Ct. at 454 ("The question remains whether the attorney general had ... *any duty* with regard to the enforcement of the [rate acts].") (emphasis added); *id.* at 161, 28 S.Ct. at 454 (attorney general's "general duty" to enforce state statutes "sufficiently connected him with the duty of enforcement to make him a proper party").

The case includes some contrary dicta, however, and in fact only held that the federal court properly enjoined the attorney general *"from commencing suits* under circumstances already stated." *Id.* at 163, 28 S.Ct. at 455 (emphasis added). The Court itself thought it was making clear that federal courts could "enjoin proceedings by state officials to enforce the legislative acts of the state, *either by criminal or civil actions."* *Id.* at 166, 28 S.Ct. at 457 (emphasis added); *see also id.* at 156, 28 S.Ct. at 452 (officials to be enjoined must have "some" enforcement duty *"and ... threaten and are about to commence proceedings, either of a civil or criminal nature"*) (emphasis added).

The law challenged in *Ex parte Young* also imposed severe criminal penalties, which by their nature called for enforcement by the attorney general, and the local states' attorneys he oversaw. The VPPFA provides no such criminal penalties. It does not appear that the Commissioner has ever enforced or will enforce the Act, except by overseeing certain legislatively prescribed record keeping and certification requirements. In this sense, the Commonwealth is aided by *Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899).

In *Fitts,* the owners of Florence Bridge in Alabama challenged the constitutionality of an Alabama statute which set maximum bridge tolls, at a rate lower than that of the previous 20 years. The act required the owners to forfeit $20 to those charged a higher rate, on demand before any justice of the peace or notary public of the counties connected by the bridge. A separate statute provided for a public fine against the owners or their agents, for charging any toll higher than authorized by charter, or otherwise found unreasonable by a jury. 172 U.S. at 516–520, 19 S.Ct. at 269–71. A federal court issued a temporary injunction against the attorney general and the solicitor of the eleventh judicial circuit of Alabama; it made the injunction permanent, after later decreeing the act to be unconstitutional. *See id.* at 524, 19 S.Ct. at 272.

The Supreme Court reversed on eleventh amendment grounds and dissolved the injunction. It emphasized that the enjoined state officers did not "appear to have been charged by law with any special duty in connection with the act." *Id.* at 529, 19 S.Ct. at 274.

The Court distinguished cases permitting injunctions, as involving defendants

> specifically charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which ... they were commencing or were about to commence some specific wrong or trespass to the injury of the plaintiff's rights.

*Id.* The Court discussed the rationale for its holding:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction ... then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law ... but it is a mode which cannot be applied to the states ... consistently with the fundamental principle [of the eleventh amendment].

*Id.* at 530, 19 S.Ct. at 274.

The Court in *Ex parte Young* did not overrule *Fitts,* but found it easily distin-

guishable.  It stressed that in *Fitts*, the criminal indictments which prompted the injunction against the attorney general were obtained under a statute separate from the maximum toll statute subject to constitutional attack.  The act permitting criminal fines and indictments "was not claimed to be unconstitutional, and the indictments found under it were not necessarily connected with the alleged unconstitutional act fixing the tolls." *Ex parte Young*, 209 U.S. at 156, 28 S.Ct. at 452.

Thus, the language of *Fitts* and the circumstances of *Ex parte Young* refute Mobil's contention that *any* connection between the Commissioner and enforcement will justify injunctive relief.  To hold that the Commissioner is a proper defendant in this case would also ignore several important characteristics of Mobil's claim.

First, the Commissioner's authority under the VPPFA relates largely to mere recordkeeping.  *E.g.*, Va.Code Ann. § 59.1–21.16:2(D)(iii) and (iv) (Cum.Supp. 1990).  Mobil does not challenge these provisions.[3]  The Commissioner's power to request certification of certain matters appears related to only one challenged statutory provision.  *Compare* Regs. § 1A, B (Commissioner may request certification of circumstances permitting temporary refiner operation of franchise outlet) *with* Complaint at para. 47(g) (complaining about 59.-1–21.16:2(A), which bars refiners from building and operating retail outlets with own personnel, during period July 1, 1990 through June 30, 1991).

Second, there is no suggestion that the Commissioner has *ever* enforced or threatened to enforce *any* VPPFA provisions, including the mere recordkeeping ones.  Clearly, that does not amount to trespass upon any of Mobil's protected property rights. *See Fitts*, 172 U.S. at 529, 19 S.Ct. at 274 (officials about to take possession of or trespass on property cannot resist adjudication of constitutional claims).

A third related point is that, as the Commonwealth notes, there is a substantial history of private litigation between refiners and retailers under the VPPFA.  *See, e.g., Portaluppi v. Shell Oil Co.*, 684 F.Supp. 900 (E.D.Va.1988), *aff'd*, 869 F.2d 245 (4th Cir.1989);  *Beach Robo, Inc. v. Crown Petroleum*, 860 F.2d 606 (4th Cir.1988); *Beach Robo, Inc. v. Crown Petroleum Corp.*, 236 Va. 131, 372 S.E.2d 144 (1988).  In such a case, courts should avoid applying their *Ex parte Young* powers.  *See Allied Artists Pictures Corp. v. Rhodes*, 496 F.Supp. 408, 427 (S.D.Ohio 1980) (governor enjoinable where "substantial obstacles lie in the path.... of vindication through private litigation."), *rev'd in part and remanded on other grounds*, 679 F.2d 656 (6th Cir.1982); *cf. Ex parte Young*, 209 U.S. at 166, 28 S.Ct. at 457 ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *A.S. Abell Co. v. Chell*, 412 F.2d 712, 717 (4th Cir. 1969) (recognizing declaratory relief is discretionary).

In short, Mobil describes at best a tenuous connection between the Commissioner, and enforcement of the provisions of the Act it calls unlawful.  That Act regulates the contractual relationships of private parties, not the relationship of Mobil and the Commissioner.  It contains no provision for criminal sanctions, and no self-contained reference to the Commissioner's enforcement authority.  It explicitly provides for civil enforcement by private parties.  Va. Code Ann. § 59.1–21.12 (Cum.Supp.1990). Courts have rejected pleas to enjoin officials in similar positions.  *See Fitts*, 172 U.S. at 529–32, 19 S.Ct. at 274–75; *Gras v. Stevens*, 415 F.Supp. 1148, 1152 (S.D.N.Y. 1976), and cases cited therein; *cf. Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736 n. 15, 100 S.Ct. 1967, 1977 n. 15, 64 L.Ed.2d 641 (1980) ("[M]ere enforcement authority does not create a case or controversy with the enforcement official").  Cases Mobil relies on to the contrary are readily distinguish-

---

**3.** The Commissioner's limited regulatory authority under the amended VPPFA is substantially the same as under prior law, which Mobil does not challenge.  *Compare* Va.Code Ann. § 59.1–21.16:2(D) (Cum.Supp.1990) *with id.* (1987).

able.[4]

*The Article III Case or Controversy Argument*

■ The Constitution provides in pertinent part that federal judicial power:

shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties ... [and] to Controversies [involving various parties....]

U.S. Const. art. III, § 2. The Declaratory Judgment Act similarly provides:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The constitutional "case or controversy" and Declaratory Judgment Act "case of actual controversy" clauses have been treated as requiring the same thing. *See, e.g., Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 117, 94 S.Ct. 1694, 1695, 40 L.Ed.2d 1 (1974).

That "thing" is difficult to define, but "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). The mere presence of a substantial constitutional question about legislation is insufficient; declaratory judgments are proper only "to adjudge the legal rights of litigants in actual controversies." *Id.* at 110, 89 S.Ct. at 960 (citations omitted); *cf. Kremens v. Bartley*, 431 U.S. 119, 136–37, 97 S.Ct. 1709, 1718–19, 52 L.Ed.2d 184 (1977) (importance of issue and convenience to parties insufficient to confer jurisdiction over claims made moot by legislative amendments).

■ Generally, no case or controversy exists, where the defendant has neither commenced nor threatened to commence prosecution of plaintiffs under the disputed statute. *E.g., Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979) (article III requires plaintiff to show "actual or threatened injury as a result of the putatively illegal conduct of the defendant."); *Doe v. Duling*, 782 F.2d 1202, 1206–07 (4th Cir. 1986) (no case or controversy in couple's challenge to Virginia fornication and cohabitation statutes, where record indicates no arrests or threatened prosecution of plaintiffs or persons similarly situated under statutes); *Shell Oil Co. v. Noel*, 608 F.2d 208, 213 (1st Cir.1979) (no case or controversy where "there is no showing that defendants intend to enforce" provisions of challenged law); *see Steffel v. Thompson,*

---

**4.** One case, for example, held that equitable relief would have been appropriate against a state court clerk, who acted purely on his own in excluding plaintiffs from a list of magistrate candidates, solely on the basis of their political affiliation. *Bright v. McClure*, 865 F.2d 623 (4th Cir.1989). Clearly, Mobil does not charge the Commissioner with such arbitrary action here.

In *Person v. Association of the Bar of the City of New York*, 554 F.2d 534, 536 (2d Cir.), *cert. denied*, 434 U.S. 924, 98 S.Ct. 403, 54 L.Ed.2d 282 (1977), the court essentially assumed that a bar disciplinary rule on advertising would be enforced, raising a first amendment controversy "of sufficient immediacy to warrant the issuance of a declaratory judgment." The court also noted that bar proceedings are comparable

to criminal proceedings. *See also Consumers Union*, 446 U.S. at 736 & n. 15, 100 S.Ct. at 1977 & n. 15 (particular facts indicated Virginia Supreme Court members also act as enforcers of disciplinary rules).

Other cases deal with officials who have rate regulating powers regarding utilities, or Medicaid reimbursement. *E.g., Aluminum Co. of America v. Utilities Comm'n of N.C.*, 713 F.2d 1024 (4th Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984); *Virginia Hosp. Ass'n v. Baliles*, 868 F.2d 653 (4th Cir. 1989), *aff'd sub nom. Wilder v. Virginia Hosp. Ass'n*, — U.S. —, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Commissioner in this case has no such direct control over what Mobil earns from its Virginia operations.

415 U.S. 452, 476, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 (1974) (declaratory relief not precluded when plaintiff "demonstrates a genuine threat of enforcement of a disputed state criminal statute," attacked as unconstitutional on face or as applied); *League of Women Voters of Cal. v. FCC*, 489 F.Supp. 517, 520 (C.D.Cal.1980) (no case or controversy, where record only indicates that FCC "might prosecute [plaintiffs] ... at some future date" under challenged law); *cf. Evers v. Dwyer*, 358 U.S. 202, 204, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958) (black man did not have to continue riding bus at risk of arrest for sitting in front, where "record ... shows that the appellees intend to enforce" the statute requiring minorities to sit in back).

■ This would seem to dispose of Mobil's claim against the Attorney General, because there is no allegation that she has ever enforced or threatened to enforce the VPPFA. But a few exceptions appear to exist to the "genuine threat of enforcement" standard.

One exception is for statutes imposing severe criminal or civil sanctions, particularly directed at the plaintiffs. *See Doe v. Bolton*, 410 U.S. 179, 188–89, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973) (Georgia physicians presented justiciable controversy about abortion statute, despite not being prosecuted or threatened with prosecution under that law, when it succeeded another law under which physicians claimed they were prosecuted). Another apparent exception exists for statutes with powerful chilling effects on vital constitutional rights. *See Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (ruling without discussion of article III issue on teacher's declaratory judgment claim against state officials, alleging unconstitutionality of Arkansas statute outlawing classroom instruction of evolution).

The cases which best support Mobil's position are *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), and *Allied Artists Pictures Corp. v. Rhodes*, 473 F.Supp. 560 (S.D.Ohio 1979), *on reconsideration*, 496 F.Supp. 408 (1980), *rev'd in part and remanded*, 679 F.2d 656 (6th Cir.1982). This Court views each of those cases as distinguishable from the one framed by Mobil.

In *McCorkle*, New Jersey officials interpreted a state law to make workers engaged in an economic strike eligible for welfare payments. Employers whose plants were struck sought injunctive and declaratory relief against such eligibility. They charged that the benefits eligibility interfered with federal labor and other policies, as expressed by federal laws. As their action proceeded, the strike ended, and the case was dismissed as moot.

The Supreme Court upheld dismissal of the injunctive relief claim as moot, but remanded for proceedings on the merits of the declaratory relief claim. The Court's rationale is worth quoting at length:

> [N]ew Jersey has declared positively that able-bodied striking workers ... are eligible for economic benefits. This policy is fixed and definite. It is not contingent upon executive discretion. Employees know that if they go out on strike, public funds are available. *The petitioners' claim is that this eligibility affects the collective-bargaining relationship*, both in the context of a live labor dispute ... *and* in the ongoing collective relationship, *so that the economic balance between labor and management, carefully formulated and preserved by Congress* in the federal labor statutes, *is altered by the State's beneficent policy toward strikers .... In this sense petitioners allege a colorable claim of injury from an extant and fixed policy directive of the State of New Jersey. That claim deserves a hearing.*

*McCorkle*, 416 U.S. at 123–24, 94 S.Ct. at 1699 (emphasis added).

Like the employers in *McCorkle*, Mobil here alleges that a state statute adversely affects a relationship which has been extensively regulated and defined by federal law, to its economic detriment. In *McCor-*

*kle,* however, the defendants were state and local welfare officials who interpreted and administered the benefits law. *Id.* at 117, 94 S.Ct. at 1695. Here, by contrast, the Attorney General of Virginia has not officially "interpreted" the challenged law, and has not enforced or administered the law in any way.

*Abbott Laboratories* was one of a series of cases involving requests for pre-enforcement injunctive and declarative relief against federal drug and cosmetic regulations.[5] In *Abbott Laboratories,* drug manufacturers filed suit against the Secretary of Health, Education and Welfare, and the Commissioner of Food and Drugs, claiming that certain regulations the commissioner issued exceeded his statutory authority. 387 U.S. at 138–39, 87 S.Ct. at 1509–10. The regulations required drug manufacturers to designate the "established" or generic name for ingredients bearing a proprietary or trade name, every time the trade name was used anywhere in prescription drug labeling or advertising. *Id.* The plaintiffs contended that the "every time" requirement was not authorized by statute. *See id.* at 149 n. 16, 87 S.Ct. at 1515 n. 16.

The Supreme Court first determined that no federal statute precluded the plaintiffs' action. *Id.* at 148, 87 S.Ct. at 1515. It then offered a two-step analysis of whether the claim presented a ripe controversy for declaratory and injunctive relief.

First, the Court noted, the parties agreed that the issue was a purely legal one, involving the commissioner's construction of his statutory authority. *Id.* at 149, 87 S.Ct. at 1515. Second, the Court found the case one "in which the impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Id.* at 152, 87 S.Ct. at 1517. Plaintiffs faced either the extremely expensive and time-consuming process of complying, or the "even more costly alternative" of violating the regulations, and risking "serious criminal and civil penalties." *Id.* 387 U.S. at 152–53 & n. 19, 87 S.Ct. at 1518 & n. 19. *Compare id. and Gardner v. Toilet Goods Ass'n,* 387 U.S. at 172–73 & n. 2, 87 S.Ct. at 1529 & n. 2 (similar claims present controversy, where compliance with regulations would allegedly cost single manufacturer over $49,000,000) *with Toilet Goods Ass'n v. Gardner,* 387 U.S. at 164–66, 87 S.Ct. at 1524–26 (exhaustion of administrative remedies required first, where refusal to admit government inspector as regulations prescribed "would at most lead only to a suspension of certification services").

The Tenth Circuit relied on *Abbott Laboratories,* to hold there was an actual controversy, when natural gas companies challenged Oklahoma statutes and regulations on grounds similar to those raised by Mobil here. *ANR Pipeline Co. v. Corporation Comm'n of the State of Oklahoma,* 860 F.2d 1571, 1577–79 (10th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989).

In *ANR Pipeline,* however, the defendants were the State Corporation Comm'n and its individual members. The commission had issued a ruling declaring it had jurisdiction to enforce the challenged regulations against interstate pipeline companies such as the plaintiffs; the pipelines had protested repeatedly that such authority would unlawfully infringe on federal regulation. *Id.* at 1573, 1577. That situation suggests a genuine threat of enforcement, much more so than the situation in Mobil's case.

*Abbott* and its companion cases do not directly address the Commonwealth's "case or controversy" argument. Mobil here has sued the Attorney General of Virginia, who has not yet acted[6] to enforce a statute

---

5. The other cases are *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) and *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

6. Mobil offers the Annual Report of the Attorney General as Exhibit B to its memorandum opposing the Commonwealth's motion. The re-

port indicates that the Attorney General has enforced other laws, after investigation by its office and other state agencies. Mobil apparently contends that this establishes an "enforcement connection" between the Commissioner and the VPPFA, and a "case or controversy," between the Attorney General and Mobil. This

drafted by legislators. The plaintiffs in *Abbott* brought suit against agency officials who promulgated the offending regulations, allegedly in violation of authorizing law. Furthermore, Mobil does not quantify the administrative or financial burdens of the law it challenges. The burdens are very speculative in some respects.[7] Section 59.1–21.11(1) of the Act, for example, prohibits Mobil from requiring its franchisees to remain open around the clock, but "shall [not] ... be construed to prevent" the franchisee from doing so, when he "determines that market conditions warrant such operation."

Finally, this Court declines Mobil's invitation, repeatedly made in oral argument, to follow the case of *Allied Artists Pictures Corp. v. Rhodes,* 473 F.Supp. 560 (S.D.Ohio 1979), *on reconsideration,* 496 F.Supp. 408 (1980), *rev'd in part and remanded,* 679 F.2d 656 (6th Cir.1982).

In that case, plaintiff movie producers and distributors named as defendants the Ohio governor and other state officials. They asked the court to declare a state law unconstitutional, and to enjoin enforcement of the law. The law broadly regulated the procedures by which movie distributors granted or sold the rights to exhibit their fare. The defendants sought to dismiss on the same grounds raised by the Attorney General in this case. The court denied the motion as to the governor, on both the eleventh amendment[8] and "case or controversy" grounds.

The *Allied Artists* court opined that "an actual threat of enforcement ... is not required for justiciability where, as in this case, the statute is mandatory, self-enforcing, and results in immediate economic injury." 473 F.Supp. at 560. The court relied principally on three United States Supreme Court cases to support its opinion. *Id.* at 560–61 (discussing *Pennsylvania v. West Va.,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed.

1117 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

This Court accepts the *Allied Artists* court's characterization of the challenged legislation. But it must respectfully view that court's reliance on the cited Supreme Court cases as misplaced.

In *Pennsylvania v. West Virginia,* for example, the West Virginia act in issue required all gas pipelines running through the state to satisfy West Virginia customers' demands, before catering to out-of-state clients. When companies had insufficient supplies to cater to all in-state customers, a state commissioner was empowered by the act to *order* companies with excess supply to make up the deficiency. 262 U.S. at 593–95, 43 S.Ct. at 663–64.

Obviously, the West Virginia statute expressly created an adversarial relationship between the state and plaintiffs. It also expressly directed a state official to enforce the statute, and to order pipeline companies to divert the flow of their product. The VPPFA does not share these characteristics.

It is even easier to distinguish *Pierce v. Society of Sisters.* There, a mandatory public education act was attacked on first amendment grounds. The Supreme Court noted that the appellant state officials "publicly announced that the Act ... is valid and *have declared their intention to enforce it.*" 268 U.S. at 533, 45 S.Ct. at 573 (emphasis added). The Attorney General has made no such announcement or declaration about the VPPFA.

Similar grounds render *Lake Carriers' Ass'n* inapplicable. The statute there allegedly suffered several constitutional infirmities, under the commerce, supremacy

---

Court does not view the report as relevant to this dispute.

**7.** This Court has no duty to accept Mobil's factual allegations of damage as true, for purposes of a Rule 12(b)(1) motion to dismiss. *Thigpen v. United States,* 800 F.2d 393, 396 (4th Cir.1986). The speculative nature of Mobil's damages are

another factor counseling against the extraordinary relief Mobil seeks. *See supra* page 1179.

**8.** As previously discussed, *Allied Artists* is also distinguishable from the present case, as far as the eleventh amendment ruling is concerned. *See supra* page 1179.

**1184**

and equal protection clauses.[9] It broadly prohibited discharge of any sewage in any navigable waters within the state of Michigan, required recreational boats to have special approved sewage holding tanks or incinerators, and otherwise restricted dumping in navigable waters. Violations were punishable as criminal misdemeanors, accompanied by a fine of up to $500.00. 406 U.S. at 502–03, 92 S.Ct. at 1753.

Again, the VPPFA has no such similar criminal provisions, and does not create such an adversarial relationship between the state which adopted it and the plaintiff which challenges it.

## IV

The Commonwealth's motion presents difficult questions of constitutional law and federal judicial policy. Mobil represented at oral argument that its compliance with the VPPFA amendments in recent franchise renewals has already forced it to cancel or modify some of its previous franchise requirements, to its detriment. But the developing conflict between Mobil and its Virginia franchisees does not create a justiciable conflict between Mobil and the defendants named in this suit.[10] To hold otherwise would prove convenient for Mobil, but would improperly extend established constitutional boundaries of justiciability. *See Fitts v. McGhee,* 172 U.S. at 530, 19 S.Ct. at 274.

For the reasons discussed above, the Commonwealth's motion to dismiss is GRANTED as to both individual defendants.

And it is SO ORDERED.

---

9. The Supreme Court ordered the district court to abstain from deciding the case, pending state court resolution of matters of statutory interpretation. 406 U.S. at 512–13, 92 S.Ct. at 1758.

10. The Court's disposition of this matter renders irrelevant the motion to intervene as defendants filed on September 24, 1990, by the Virginia Gasoline & Automotive Repair Association, Inc., and the Virginia Service Station & Automotive Services Association, Inc.